IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELINDA STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00352-N |
| | § | |
| DFW LINQ TRANSPORT, INC., | § | |
| | § | |
| Defendant. | § | |

# **MEMORANDUM OPINION AND ORDER**

This Order addresses DFW LinQ Transport, Inc.'s ("DFW LinQ") motion to dismiss and compel arbitration [7]. Because the Court cannot determine whether a valid and enforceable arbitration agreement exists, the Court denies the motion.

## I. ORIGINS OF THE DISPUTE

This dispute arises from Stephens's employment as a phone dispatcher at DFW LinQ. Pl.'s Compl. [1] ¶ 11. Stephens became pregnant while employed at DFW LinQ and asserts that DFW LinQ failed to reasonably accommodate her during her pregnancy. *Id.* ¶¶ 12, 27. She also alleges that DFW LinQ terminated her because she was pregnant. *Id.* ¶¶ 18-22, 28. Stephens filed suit against DFW LinQ, raising claims for gender and pregnancy discrimination in violation of state and federal law. *Id.* ¶¶ 29, 32.

During Stephens's onboarding at DFW LinQ, she signed an agreement titled "Mutual Agreement to Arbitrate" (the "Agreement"). Def.'s Mot. Dismiss 2 [7]. The Agreement is between three parties: the "Claimant," the "Insurer," and the "Insured." Def.'s App. 02 [8]. The Claimant is Stephens. *See id.* at 02, 05. The Insurer is Homeland

MEMORANDUM OPINION AND ORDER – PAGE 1

Insurance Company of New York. *Id.* at 02. The Agreement defines the Insured as those "set forth in Schedule A." *Id.* However, DFW LinQ did not include Schedule A in its appendix. The Agreement also refers to an "insurance policy issued by the Insurer to the Insured," *id.*, but DFW LinQ did not include the insurance policy in the appendix, either.

Section 4 of the Agreement stipulates that covered claims "shall be exclusively resolved by binding arbitration." Def.'s App. 02. Covered claims include:

> all claims that Claimant may have which arise from: Any injury suffered by Claimant including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character.

*Id.* at 02–03. Further, pursuant to Section 5(b), any "question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement." *Id.* at 03.

DFW LinQ filed this motion to dismiss and compel arbitration, arguing that Stephens's claims are subject to arbitration under the Agreement. Def.'s Mot. Dismiss 4. Stephens opposes the motion, asserting that DFW LinQ did not put forward the entire Agreement. Pl.'s Resp. 3–4 [12]. Alternatively, Stephens argues that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") renders her claims inarbitrable. *Id.* at 4–5.

## II. LEGAL STANDARD

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3; *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Courts in the Fifth Circuit conduct a two-step inquiry when considering a motion to compel arbitration.

First, the court considers "contract formation—whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Questions of "an arbitration agreement's existence" are "matters for courts, not arbitrators." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 (5th Cir. 2019) (citation omitted). "While the presence of an arbitration clause generally creates a presumption in favor of arbitration, the presumption disappears when the parties dispute the existence of a valid arbitration agreement." *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 311–12 (5th Cir. 2020) (unpub.) (cleaned up).

Second, the court interprets the arbitration agreement "to determine whether *this* claim is covered by the arbitration agreement." *Kubala*, 830 F.3d at 201. The second step is a question for the courts unless "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim." *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). If there is a valid delegation clause, then "the motion to compel arbitration should be granted in almost all

cases." *Id.* at 202. The party seeking to compel arbitration bears the burden of establishing these elements. *Halliburton*, 21 F.3d at 530–31.

Then, if "the court finds that the parties agreed to arbitrate [the claim], the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Watson v. Blaze Media LLC*, 2023 WL 5004144, at *2 (N.D. Tex. 2023) (quoting *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021)).

### B. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02, creates exceptions to the FAA. Specifically, the EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. 402(a). The EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). When a party alleges "conduct constituting a sexual harassment dispute," the EFAA makes predispute arbitration agreements unenforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute." *Id.* § 402(a). Whether the EFAA applies to a dispute is a question for the courts. *Id.* § 402(b).

MEMORANDUM OPINION AND ORDER – PAGE 4

### III. THE COURT DENIES THE MOTION TO DISMISS AND COMPEL ARBITRATION

DFW LinQ argues that Stephens's claims are subject to a valid, enforceable, and mandatory arbitration agreement between the parties. Def.'s Mot. Dismiss 1. Stephens disputes the existence of a valid arbitration agreement, or alternatively argues that the EFAA invalidates the predispute arbitration agreement. Pl.'s Resp. 3–5. The Court must determine whether an arbitration agreement exists between Stephens and DFW LinQ before addressing whether a valid delegation clause exists. Because DFW LinQ has not established that the parties entered into a valid arbitration agreement, the Court denies DFW LinQ's motion to dismiss and compel arbitration.

#### *A. Texas Law Governs the Issue of Contract Formation*

The Court will apply Texas law to the question of whether an arbitration agreement exists between Stephens and DFW LinQ. Whether the parties formed a valid arbitration agreement turns on state contract law. *Kubala*, 830 F.3d at 202. Because the Court cannot determine whether the parties entered into the Agreement, the Agreement's choice-of-law provision, *see* Def.'s App. 05, is inapplicable to the issue of contract formation. *See Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020) (The "choice-of-law provision has force only if the parties validly formed a contract."). Thus, the Court "must follow the choice-of-law rules of the state in which it sits." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at *2 (N.D. Tex. 2019) (citing *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000)).

Texas uses the "most significant relationship test" to decide choice-of-law issues. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (citation omitted). Under this test, courts consider factors such as "the place of contracting, the place of negotiating the contract, the place of performance, the location of the subject matter of the contract, and the residency of the parties." *Krohn*, 2019 WL 4572833, at *2 (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007)). Texas law governs this issue because Texas has the most significant relationship to this dispute—Stephens and DFW LinQ are both located Texas, and Stephens was employed at the company's Bedford, Texas, office. Pl.'s Compl. ¶¶ 2–3, 11.

### B. DFW LinQ Has Not Met Its Burden to Show a Valid Arbitration Agreement Exists

The Court holds that DFW LinQ has not met its burden to show that a valid and enforceable arbitration exists. Under Texas law, a contract exists if there is "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (citation omitted). Because the record before the Court does not include the complete Agreement, the Court cannot determine the threshold issue of whether a contract was formed between Stephens and DFW LinQ.

DFW LinQ did not include Schedule A or the referenced insurance policy in its motion or appendix. Without these documents, the contract is incomplete, and the Court cannot determine whether a contract exists—specifically, whether there was a meeting of the minds, each party's consent to the terms, or execution and delivery of the contract with

MEMORANDUM OPINION AND ORDER – PAGE 6

intent that it be mutual and binding. *See In re Capco Energy*, 669 F.3d at 279–80. Accordingly, the Court cannot determine whether a valid and enforceable arbitration agreement exists between Stephens and DFW LinQ.

Because the Court cannot determine whether a valid arbitration agreement exists, the Court does not address the issue of whether the Agreement's delegation clause is valid. The Court also does not reach the issue of whether the EFAA renders the Agreement unenforceable.

## CONCLUSION

Because of the incomplete record, the Court cannot determine whether a valid and enforceable arbitration agreement exists between Stephens and DFW LinQ. Thus, the Court denies DFW LinQ's motion to dismiss and compel arbitration.

Signed September 30, 2024.

David C. Godbey
Chief United States District Judge