IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELINDA STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00352-N |
| | § | |
| DFW LINQ TRANSPORT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses DFW LinQ Transport, Inc.'s ("DFW LinQ") motion to stay the proceedings and compel arbitration [21]. Because DFW LinQ and Plaintiff Melinda Stephens entered into a valid arbitration agreement with a delegation clause, the Court grants the motion.

### I. ORIGINS OF THE DISPUTE

This dispute arises out of Stephens's employment as a phone dispatcher at DFW LinQ. Pl.'s Compl. ¶ 11 [1]. Stephens became pregnant while employed at DFW LinQ and asserts that DFW LinQ failed to reasonably accommodate her during her pregnancy and terminated her because she was pregnant. *Id.* ¶¶ 27–28. Stephens now brings claims against DFW LinQ for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act of 1978, and the Texas Commission on Human Rights Act ("TCHRA"). *Id.* ¶¶ 24–34.

During Stephens's onboarding at DFW LinQ, she signed an agreement titled "Mutual Agreement to Arbitrate" (the "Agreement"). Def.'s App. 2–5 [22]. The

MEMORANDUM OPINION AND ORDER – PAGE 1

Agreement involves an insurance policy held by DFW LinQ and is between three parties: the "Claimant," the "Insurer," and the "Insured." *Id.* at 2, 7. The Claimant is Stephens. *Id.* at 2, 5. The Insurer is Homeland Insurance Company of New York ("Homeland"). *Id.* at 2. And the Agreement defines the Insured as those "set forth in Schedule A," with Schedule A listing DFW LinQ as the Insured. *Id.* at 2, 43–46.

Section 4 of the Agreement stipulates that covered claims "shall be exclusively resolved by binding arbitration." *Id.* at 2. Covered claims include:

> all claims that Claimant may have which arise from: Any injury suffered by Claimant including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character.

*Id.* at 2–3. Further, pursuant to Section 5(b), any "question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement." *Id.* at 3. DFW LinQ filed this motion to stay proceedings and compel arbitration, arguing that Stephens's claims are subject to arbitration under the Agreement. Def.'s Mot. 6–7 [21].

## II. LEGAL STANDARDS

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") requires courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute.

MEMORANDUM OPINION AND ORDER – PAGE 2

9 U.S.C. § 3.  Courts in the Fifth Circuit conduct a two-step inquiry when considering a motion to compel arbitration.

First, the court considers "contract formation — whether the parties entered into *any arbitration agreement at all*."  *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).  Questions of "an arbitration agreement's existence" are "matters for courts, not arbitrators."  *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 (5th Cir. 2019) (citation omitted).  "While the presence of an arbitration clause generally creates a presumption in favor of arbitration, the presumption disappears when the parties dispute the existence of a valid arbitration agreement."  *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 311–12 (5th Cir. 2020) (unpub.) (citations and internal quotation marks omitted).

Second, the court interprets the arbitration agreement "to determine whether *this* claim is covered by the arbitration agreement."  *Kubala*, 830 F.3d at 201.  The second step is a question for the court unless "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim."  *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).  A "purported delegation clause is in fact a delegation clause . . . if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."  *Id.* at 202.  If there is a valid delegation clause, then "the motion to compel arbitration should be granted in almost all cases."  *Id.*

Then, if "the court finds that the parties agreed to arbitrate" the claim at issue, "the court typically 'must consider whether any federal statute or policy renders the claims

nonarbitrable.'" *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021) (quoting *Will-Drill Res. v. Samson Res.*, 352 F.3d 211, 214 (5th Cir. 2003)).

### B. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02, creates exceptions to FAA. Specifically, EFAA states:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). Whether EFAA applies to a dispute is a question for the courts. *Id.* § 402(b).

## III. THE COURT GRANTS THE MOTION TO COMPEL ARBITRATION

### A. DFW LinQ Has Not Waived its Right to Arbitration

Stephens asserts that DFW LinQ has waived its right to seek arbitration because DFW LinQ responded to discovery requests and because of an admission DFW LinQ made in its initial disclosures. Pl.'s Resp. 2–3 [26].

"Despite the strong federal policy favoring arbitration, the right to arbitration may be waived." *Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 398 (5th Cir. 1989) (citation omitted). Courts construe a party's conduct to amount to a waiver of the

right to arbitration "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* To invoke the judicial process, the "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (citation and internal quotation marks omitted).

Here, DFW LinQ has not substantially invoked the judicial process to the detriment or prejudice of Stephens. DFW LinQ first put Stephens on notice that it desired to resolve this dispute through arbitration when it filed its first motion to compel arbitration in April 2024. *See generally* Def.'s First Mot. Compel Arb. [7]. After this Court denied the first motion because DFW LinQ had not included the complete contract in the record, *see generally* Mem. Op. & Order (Sept. 30, 2024) [14], DFW LinQ informed Stephens of its intent to file another motion to compel arbitration. *See* Joint Status Report 1–2 [20]. And DFW LinQ's providing initial disclosures and responding to Stephens's discovery requests did not substantially invoke the judicial process in a way that constitutes waiver. *See, e.g.*, *Summit Emergency Holdings, LLC v. Michael J. Camlinde & Assoc., Inc.*, 2018 WL 5631502, at *7 (N.D. Tex. 2018) (stating a party must do more than participate in minimal discovery to substantially invoke the judicial process (collecting cases)). Accordingly, DFW LinQ has not engaged in an overt act evincing a desire to resolve the dispute through litigation rather than arbitration.

Stephens also argues that an admission that DFW LinQ made constitutes an admission that the insurance policy does not apply to her claims, and thus that the

MEMORANDUM OPINION AND ORDER – PAGE 5

Agreement does not apply to her claims. Pl.'s Resp. 2. In the admission at issue, DFW LinQ stated, "At this time, it does not appear that there is any insurance agreement under which any insurer may be liable to satisfy part or all of a judgment in this case." *Id.* Ex. 1 at 5. However, the Agreement applies to "any disputes that may arise between any or all of the parties," including disputes between DFW LinQ and Stephens not involving Homeland. Def.'s App. 2. And the definition of covered claims in the Agreement does not require that the covered claims must be covered by the insurance policy. *See id.* at 2–3. Therefore, DFW LinQ's admission that the insurance policy does not cover Stephens's claims does not constitute an admission that the Agreement does not apply to her claims.

Thus, the Court holds that DFW LinQ has not waived its right to arbitration.

### B. A Valid Arbitration Agreement Between the Parties Exists

Next, the Court engages in the first step of the two-step inquiry in considering a motion to compel arbitration: whether the parties entered into an arbitration agreement. *Kubala*, 830 F.3d at 201. Stephens claims that she and DFW LinQ did not form an arbitration agreement, but her arguments in support of this relate to whether her claims are covered by the Agreement, not whether an agreement to arbitrate was formed. *See* Pl.'s Resp. 3–4.

Here, the Court determines that the parties entered into an arbitration agreement. The Agreement contains a choice-of-law provision designating Oklahoma law as governing questions of enforceability. Def.'s App. 7. Under Oklahoma law, "there are four elements to a valid contract: (1) the parties are capable of contracting, (2) they consented to the agreement, (3) the contract has a lawful object, and (4) there is sufficient

consideration." *Papenek v. Dish Network, L.L.C.*, 2024 WL 1828176, at *3 (N.D. Okla. 2024) (citing OKLA. STAT. TIT. 15, § 2). Stephens does not dispute that these elements have been met. *See* Pl.'s Resp. 3–4. The Court thus determines that a contract was formed. Moreover, the Agreement stipulates that covered claims "shall be exclusively resolved by binding arbitration." Def.'s App. 2. Therefore, the parties formed an arbitration agreement.

### C. The Agreement Contains a Valid Delegation Clause

Ordinarily, in the second step of the inquiry in considering a motion to compel arbitration, courts determine whether the arbitration agreement covers the claims at issue. *Kubala*, 830 F.3d at 201. However, when an arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *Id.* Instead, courts determine "whether the purported delegation clause evinces an intent to have the arbitrator decide threshold issues of arbitrability." *Hunter v. Baylor Health Care Sys.*, 2019 WL 2995899, at *3 (N.D. Tex. 2019) (Godbey, J.). Here, the Agreement stipulates that any "question as to the arbitrability of any particular claim shall be arbitrated pursuant to the procedures set forth in this Agreement." Def.'s App. 3. The Court holds that this language conveys an intent to have the arbitrator decide whether a given claim falls within the scope of the Agreement. The Agreement thus contains a valid delegation clause.

### D. EFAA Does Not Apply to Stephens's Claims

Next, the Court considers whether any federal statute or policy renders Stephens's claim nonarbitrable. *Polyflow*, 993 F.3d at 302. Stephens asserts that because her "claim

MEMORANDUM OPINION AND ORDER – PAGE 7

arises out of the sex-based discrimination on the basis of her pregnancy, the claim must be covered" by EFAA. Pl.'s Resp. 5.

Under EFAA, arbitration agreements are not enforceable with respect to sexual assault and sexual harassment claims. *See* 9 U.S.C. § 402(a). However, "Title VII distinguishes between sexual harassment and sex . . . discrimination."[1] *Lopez v. AT&T Mobility Servs. LLC*, 2025 WL 600120, at *7 (W.D. Tex. 2025). "The former involves unwelcome sexual advances or other verbal or physical conduct of a sexual nature, whereas the latter refers to discriminating against someone because of their [protected characteristic]." *Id.* (citation and internal quotation marks omitted). "Unwelcome sexual harassment can take several forms, including 'sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee.'" *Karamatic v. Peyton Res. Grp., L.P.*, 2022 WL 2972222, at *2 (N.D. Tex. 2022) (Godbey, J.) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir. 1986)).

Here, Stephens does not bring a sexual harassment claim against DFW LinQ. Nonetheless, she argues that her allegation that her supervisor "became frustrated with the amount of time Stephens was required to visit her doctor" during her pregnancy supports a sexual harassment claim. Pl.'s Resp. 3–4; *see also* Pl.'s Compl. ¶ 16. The Court disagrees; the allegation that her supervisor became frustrated, without more, does not

---

[1] When applying TCHRA, courts look to analogous federal law contained in Title VII. *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 912 (5th Cir. 2000); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445–46 (Tex. 2004). Accordingly, the Court analyzes Stephens's Title VII and TCHRA claims under the same standard.

constitute an allegation of unwelcome conduct of a sexual nature. Thus, because Stephens has not pled facts supporting a sexual assault or sexual harassment claim, EFAA does not apply to this dispute.

## CONCLUSION

Because DFW LinQ has shown that the Agreement is valid and delegates the question of arbitrability, the Court grants DFW LinQ's motion to compel arbitration and hereby orders the parties to proceed in arbitration in accordance with the procedures set out in the Agreement. The Court then stays this case pending the outcome of arbitration and directs the Clerk to administratively close this case.[2]

Signed June 16, 2025.

_____
David C. Godbey
Chief United States District Judge

---

[2] FAA requires courts to stay, rather than dismiss, lawsuits involving an arbitrable dispute. *Smith v. Spizzirri*, 601 U.S. 472, 477–79 (2024).